**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SARAH PARK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANTHROPOLOGIE, INC.,<br><br>Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff—Sarah Park ("Plaintiff" or "Park")—brings this action individually and on behalf of all current and former hourly retail employees (collectively, "Plaintiff and the Putative Collective Members"), who worked for Defendant—Anthropologie, Inc. ("Anthropologie")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19.

**OVERVIEW**

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA.

2.      Plaintiff and the Putative Collective Members are those similarly situated persons who worked for Anthropologie at any time during the relevant time period(s) through the final disposition of this matter, who have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of federal law.

1

3.       Although Plaintiff and the Putative Collective Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.       During the relevant time period(s), Anthropologie knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

5.       Specifically, Anthropologie's regular practice—including during weeks when Plaintiff and the Putative Collective Members worked in excess of forty (40) hours—was (and is) to have store managers improperly alter and reduce the recorded clock-in and clock-out times of Plaintiff and the Putative Collective Members in the electronic timekeeping system, resulting in employees not being compensated for all hours they actually worked.

6.       The effect of Anthropologie's practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective Members was not (and is not) counted and paid; thus, Anthropologie has failed to properly compensate Plaintiff and the Putative Collective Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA.

7.       Anthropologie knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

8.       Plaintiff and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

2

9.      Plaintiff and the Putative Collective Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

10.     Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## THE PARTIES

11.     Plaintiff—Sarah Park ("Park")—was employed by Anthropologie in Texas during the relevant time period(s). Plaintiff Park did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     The FLSA Collective Members are those current and former hourly retail employees who were employed by Anthropologie, anywhere in the United States, at any time from July 13, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Park worked and was paid.

13.     Defendant Anthropologie, Inc. ("Anthropologie") is a for-profit corporation that is headquartered in the Commonwealth of Pennsylvania, and may be served through its registered office for service of process: Anthropologie, Inc., 5000 South Broad Street, Philadelphia, Pennsylvania 19112.

## JURISDICTION & VENUE

14.     This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

---

[1] The written consent of Sarah Park is attached hereto as Exhibit "A."

15.     Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

16.     This Court has general personal jurisdiction over Anthropologie because Pennsylvania qualifies as its home state. Additionally, Anthropologie maintains its corporate headquarters at 5000 South Broad Street, Philadelphia, Pennsylvania 19112, which is located within this District.

17.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District of Pennsylvania because Anthropologie maintains its corporate headquarters in Philadelphia, Pennsylvania, which is located within this District.

### BACKGROUND FACTS

18.     Anthropologie operates a chain of specialty retail clothing, accessories, and home goods stores throughout the United States.[2]

19.     To provide its services, Anthropologie employed (and continues to employ) numerous hourly retail employees—including Plaintiff and the individuals that make up the putative collective.

20.     Plaintiff and the Putative Collective Members were employed by Anthropologie as hourly, non-exempt retail employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

21.     Plaintiff and the Putative Collective Members' job duties include assisting customers, stocking and displaying merchandise, operating point-of-sale systems, and performing other retail store operations.

---

[2] https://www.anthropologie.com (last visited July 13, 2026).

22.     While exact job titles may differ, these hourly, non-exempt employees were subjected to the same or similar illegal pay practices for similar work.

23.     Importantly, none of the FLSA exemptions relieving a covered employer (such as Anthropologie) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective Members.

24.     Plaintiff Park was employed by Anthropologie as a retail employee in Austin, Texas from approximately 2019 until the present. During her employment, Plaintiff Park worked in the roles of Sales Assistant, earning approximately ten dollars ($10.00) per hour, and, beginning in approximately mid-2024 through approximately mid-2025, as an Assistant Department Manager, earning approximately eighteen dollars ($18.00) per hour; since approximately mid-2025, Plaintiff Park has again worked in the Sales Assistant role.

25.     During her employment with Anthropologie, Plaintiff Park typically worked four (4) to five (5) days per week. Plaintiff Park's hours varied by role: as a Sales Assistant, she worked anywehere from twelve (12) to forty-one (41) hours per week; as an Assistant Department Manager, she worked approximately thirty-five (35) to forty-two (42) hours per week.

**Plaintiff and the Putative Collective Members are Similarly Situated**

26.     Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Anthropologie resulting in the complained of FLSA violations.

27.     Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties—that is, they all worked as hourly retail employees performing store operations for Anthropologie.

28.     Plaintiff and the Putative Collective Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and Anthropologie store managers improperly altered their recorded clock-in and clock-out times in the UKG timekeeping system.

29.     Plaintiff and the Putative Collective Members are similarly situated with respect to Anthropologie's policies (and practices) resulting in the complained of FLSA violations.

**Improper Manipulation of Time Records**

30.     Plaintiff and the Putative Collective Members were not (and continue to not be) compensated for all the hours they worked for Anthropologie as a result of Anthropologie's practice of having store managers improperly alter and reduce employee clock-in and clock-out times in the UKG timekeeping system.

31.     Anthropologie requires its hourly retail employees to record their hours worked by clocking in and clocking out through the UKG workforce management application ("UKG App"), accessed on portable Motorola devices kept at each store location.

32.     Anthropologie's store managers have the ability to access and alter employee time entries within the UKG App, including the ability to change the clock-in and clock-out times recorded by employees. When a manager edits a time entry, the UKG App records the change and, for a limited period, displays the notation "edited by [manager's name]" next to the altered time entry.

33.     Anthropologie's store managers have used this editing capability to systematically reduce the recorded work time of Plaintiff and the Putative Collective Members by altering their clock-in times to reflect a later start time, and altering their clock-out times to reflect an earlier end time, than what employees actually worked. As a result, Anthropologie's time records understate the actual hours worked by Plaintiff and the Putative Collective Members, and Anthropologie has

6

failed to pay Plaintiff and the Putative Collective Members for the time that was removed from their timekeeping records.

34.     On or about April 4, 2026, Plaintiff Park attempted to clock into the UKG App at the start of her shift, but the UKG App was temporarily unavailable. A store manager on duty that evening manually entered Plaintiff Park's clock-in time as 7:01 p.m. Later that same evening, after Plaintiff Park had left the store, Plaintiff Park reviewed the UKG App and discovered that her clock-in time had been altered from 7:01 p.m. to 7:08 p.m.—a reduction of seven (7) minutes— by store manager Rebecca, who had not served as the manager on duty that day and had not been present at the store during Plaintiff Park's shift. Because the UKG App displays the notation "edited by [manager's name]" next to altered entries for a limited time before the entry refreshes, Plaintiff Park was able to confirm that her time record had been intentionally changed.

35.     Prior to the April 4, 2026 incident, Plaintiff Park had noticed on multiple occasions that her recorded clock-in and clock-out times appeared to differ by several minutes from the times she had actually worked. The April 4, 2026 incident confirmed what Plaintiff Park had long suspected: that Anthropologie's store managers have been regularly and systematically altering employee time entries in the UKG App to reduce the hours recorded—and thus the wages owed— to Plaintiff and the Putative Collective Members. Indeed, the UKG App's own notation that a time entry was "edited by [manager's name]" demonstrates that Anthropologie's timekeeping system is designed to enable, and does enable, manager-level manipulation of employee time records.

36.     Anthropologie's practice of allowing store managers to alter employee time records without employee notification or approval provides store managers with the ability to manipulate employee time records to reduce Anthropologie's labor costs at the expense of its hourly workforce.

37.     Although individual instances of time shaving may involve only a few minutes per shift, the systematic and recurring nature of Anthropologie's practice results in the aggregate loss of substantial compensable work time across each workweek. Anthropologie's deliberate alteration of employee time records is categorically distinct from the kind of trivial, inadvertent timekeeping discrepancy that courts have found to be non-compensable under the de minimis doctrine; the de minimis doctrine does not shield an employer that intentionally manipulates its own timekeeping records to deprive employees of earned compensation.

38.     Additionally, when the UKG App is temporarily unavailable, store managers are authorized to manually enter employee clock-in and clock-out times. While these manual entries are also noted in the UKG App as "edited by manager," this creates a circumstance in which it is difficult for employees to distinguish between legitimate manual time entries made due to system outages and time entries that have been improperly altered to reduce employees' compensable work time.

39.     For example, during a workweek in the summer of 2024, when Plaintiff Park was employed as an Assistant Department Manager, the UKG App recorded approximately forty (40) hours of work for Plaintiff Park that week. As a result of Anthropologie's practice of having store managers alter Park's clock-in and clock-out times in the UKG App, the recorded time understated Park's actual hours; Park actually worked approximately forty-one (41) hours that workweek— meaning that approximately one (1) hour of compensable work time was removed from her records and went unpaid. Because Park's actual hours that workweek exceeded forty (40), those shaved hours constituted unpaid overtime under the FLSA, and Anthropologie failed to compensate her for them.

40.     In weeks in which Plaintiff and the Putative Collective Members worked fewer than forty (40) hours of recorded time, the uncompensated, shaved work time qualified as unpaid straight time. In weeks in which Plaintiff and the Putative Collective Members worked forty (40) or more hours of actual time, the uncompensated, shaved work time qualified as unpaid overtime.

41.     Anthropologie knew (or should have known) that Plaintiff and the Putative Collective Members were performing work for which they were not being compensated as a result of Anthropologie's store managers improperly altering employee time records in the UKG timekeeping system.

42.     Anthropologie's actions therefore constitute willful violations under the law and were not made in good faith. As a result of Anthropologie's willful conduct, the applicable statute of limitations is three (3) years pursuant to 29 U.S.C. § 255(a), extending the relevant period back to July 13, 2023.

43.     Anthropologie knew or should have known that its failure to pay the correct amount of overtime to Plaintiff and Putative Collective Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective Members.

44.     Because Anthropologie did not pay Plaintiff and the Putative Collective Members time and a half for all hours actually worked in excess of forty (40) in a workweek, Anthropologie's pay policies and practices willfully violated (and continue to violate) the FLSA.

45.     Plaintiff and the Putative Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Collective Action Alleging FLSA Violations)**

**A.    FLSA COVERAGE**

46.    The preceding paragraphs are incorporated as though fully set forth herein.

47.    The "FLSA Collective" is defined as:

**ALL CURRENT AND FORMER HOURLY RETAIL EMPLOYEES WHO WERE EMPLOYED BY ANTHROPOLOGIE, INC., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JULY 13, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

48.    At all material times, Anthropologie has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

49.    At all material times, Anthropologie has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

50.    At all material times, Anthropologie has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of retail stores and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

51.    Specifically, Anthropologie employs hundreds of retail employees to operate its retail stores across the United States, purchases merchandise through commerce, and conducts

transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

52. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Anthropologie, these individuals provided services for Anthropologie that involved interstate commerce for purposes of the FLSA.

53. In performing work for Anthropologie, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

54. Specifically, Plaintiff and the FLSA Collective Members are (or were) employees who provided retail sales and store operations services to Anthropologie's customers throughout the United States. 29 U.S.C. § 203(j).

55. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

56. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b)—is defined in paragraph 47.

57. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Anthropologie.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

58. Anthropologie violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of retail stores, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked

11

in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

59.     Moreover, Anthropologie knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

60.     Anthropologie knew or should have known its pay practices were in violation of the FLSA.

61.     Anthropologie is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

62.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Anthropologie to pay them according to the law.

63.     The decision and practice by Anthropologie to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

64.     Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C.     **COLLECTIVE ACTION ALLEGATIONS**

65.     All previous paragraphs are incorporated as though fully set forth herein.

66. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Anthropologie's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

67. Other employees have been victimized by Anthropologie's pay practices and patterns that are in willful violation of the FLSA.

68. The FLSA Collective is defined in paragraph 47.

69. Anthropologie's failure to pay overtime compensation for the hours that Plaintiff and the FLSA Collective Members worked over forty (40) hours each workweek resulted from generally applicable policies or practices, and did not depend on the personal circumstances of the FLSA Collective Members.

70. Thus, Plaintiff's experiences are typical of those of the FLSA Collective Members.

71. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

72. All FLSA Collective Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

73. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

74. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Anthropologie will retain the proceeds of its violations.

75.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

76.    Accordingly, the FLSA Collective of similarly situated plaintiffs should be certified as defined in paragraph 47 and notice should be promptly sent.

**RELIEF SOUGHT**

Plaintiff Sarah Park respectfully prays for judgment against Anthropologie as follows:

a.    For an Order certifying the FLSA Collective as defined in paragraph 47;

b.    For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.    For an Order pursuant to § 16(b) of the FLSA finding Anthropologie liable for unpaid wages, including unpaid straight-time wages and unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d.    For an Order awarding the costs of this action;

e.    For an Order awarding attorneys' fees;

f.    For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

g.    For an Order compelling the accounting of the books and records of Anthropologie, at Anthropologie's expense (should discovery prove inadequate); and

14

h.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   July 13, 2026                                Respectfully submitted,

                                                **FARUQI & FARUQI, LLP**

                                                By:   *s/ Timothy J. Peter*
                                                         Timothy J. Peter

                                                Timothy J. Peter (# 306965)
                                                1617 John F Kennedy Blvd #1550
                                                Philadelphia, PA 19103
                                                Telephone: 215-277-5770
                                                Facsimile: 215-277-5771
                                                Email: tpeter@faruqilaw.com

                                                Innessa M. Huot (*Pro Hac Vice* forthcoming)
                                                **FARUQI & FARUQI, LLP**
                                                685 Third Avenue, 26th Floor
                                                New York, NY 10017
                                                Telephone: 212-983-9330
                                                Facsimile: 212-983-9331
                                                Email:  ihuot@faruqilaw.com

                                                Clif Alexander (*Pro Hac Vice* Anticipated)
                                                Austin W. Anderson (*Pro Hac Vice* Anticipated)
                                                Lauren E. Braddy (*Pro Hac Vice* Anticipated)
                                                Carter T. Hastings (*Pro Hac Vice* Anticipated)
                                                **ANDERSON ALEXANDER, PLLC**
                                                101 N. Shoreline Blvd., Suite 610
                                                Corpus Christi, Texas 78401
                                                Telephone: (361) 452-1279
                                                Facsimile: (361) 452-1284
                                                Email:  clif@a2xlaw.com
                                                         austin@a2xlaw.com
                                                         lauren@a2xlaw.com
                                                         carter@a2xlaw.com

                                                *Counsel for Plaintiff and Putative Collective Members*

15